Thomas A. Aurelio, J.
The motion is for an order setting aside the judgment entered in this action and for a new trial on the ground that alleged newly discovered evidence set forth in the moving papers would have the effect of changing the result upon a new trial. The motion was returnable before me during a regularly designated motion term of this court. The moving party contended that the motion must be heard and decided by me, relying on the express language of section 552 of the Civil Practice Act that “In a case not specified in the last three sections, a motion for a new trial must be heard' and decided, in the first instance, at the special term.” The opposing party urged that the motion be referred to the Trial Justice who was familiar with the entire matter.
Searching research unearthed no existing authority construing the quoted provision of the section. However, the long established practice of this court has been to invariably refer such motions to the Justice who presided at the trial.
This practice is sound in reason. The Trial Justice is familiar with the events of the trial. In most instances he can discern the cogency of the purported newly discovered evidence from a mere reading of the motion papers. In others, all that may be necessary is reference to a pertinent part of the record to refresh his recollection. The Special Term Justice, on the other hand, must of necessity study the case on appeal in order to be able to properly determine whether the submitted matter is in fact newly discovered and whether it is of sufficient importance and materiality to warrant a new trial. In this case the record on appeal consists of 714 pages representing eight days of trial. Conceivably situations may arise where the record to be reviewed may run to many thousands of pages. It is common knowledge that the Justice presiding at *662 Special Term is confronted with a pressing and voluminous task. For good cause, therefore, does the well established practice exist to refer such motions to the Trial Judge. It relieves the Special Term Justice of an onerous and unnecessary burden.
Under sections 549 and 5.50 of the Civil Practice Act, a motion for a new trial can be made directly to the Trial Justice upon specified grounds which he can “ in his discretion ” entertain providing it is made ‘ ‘ during the same term ’ ’ of the court. However, once the term expires or the Trial Judge in his discretion refuses to entertain the motion, or the basis of the motion is other than as specified in sections 549, 550 and 551, a formal motion, upon enumerated papers, is required to be made (and decided) at Special Term pursuant to section 552. But this section is mandatory only in the sense that it requires such a motion to be heard and decided at the Special Term. It does not enjoin a referral of the motion by the Justice presiding to another Justice better qualified to determine it. The Trial Justice upon such a referral is not precluded from hearing and deciding the motion sitting as a Justice '‘ at the special term ’ ’. In accordance with these views and the well established practice, I referred the motion to the Trial Justice.
The motion has now been referred back to me upon the ground that pursuant to section 552, it is mandatory that I, as the Special Term Justice presiding on the return date of the motion, hear and decide it. For the reasons hereinabove set forth, I respectfully disagree with my learned colleague. However, since the motion is again before me I shall pass on its merits.
The plaintiff, Aaron Travitzky, brought this action against the defendants, the surviving members of the firm of M. Schamroth & Sons to recover the sum of $323,290.79, claiming it to be the balance due him as a result of certain transactions with them. The defendants not only denied plaintiff’s claim but counterclaimed for the sum of $112,406.01.
Plaintiff was in the business of buying diamonds in Belgium importing them to this country and selling them here. Defendants as members of the firm of M. Schamroth & Sons were in the business of buying and selling diamonds in Belgium and exporting them to the United States. The parties did business together for many years although only four years are involved in this lawsuit.
The method in which the parties did business was described at the trial. Plaintiff purchased diamonds from or through defendants and paid for them either by his own check or promissory note or by promissory notes of his customers. The gist of *663 plaintiff’s claim was that during the period involved he delivered to the defendants negotiable paper in an amount far in excess of the price of the diamonds purchased by him and that by reason thereof there was a net balance due him of $323,290.79.
The defendants contended that as a result of the transactions between the parties, plaintiff was indebted to them in the sum of $655,134.89, less credits for payments made by him in the sum of $542,728.86 or a balance of $112,406.01 which was due them.
A crucial issue at the trial was the amount of the purchases made by the plaintiff. Plaintiff contended that in every instance the defendants shipped the merchandise to him and that everything that he purchased was reflected in the consular invoices and in the invoices given to him by the defendants. Such invoices were introduced in evidence at the trial.
The defendants claimed that plaintiff received merchandise in person which he took away with him in addition to the merchandise which they shipped to him as reflected by the consular invoices and that the total purchases made by him were truly reflected in a certain black book also introduced in evidence.
On this issue, after an eight-day trial, the jury found in favor of the defendants. A judgment was entered on the defendants’ counterclaim in the sum of $99,082.38 on April 4, 1946 and filed in the office of the clerk of this court on April 9, 1946. An appeal was taken to the Appellate Division which unanimously affirmed, without opinion, the judgment of the trial court on March 7, 1947 (271 App. Div. 998). An application for leave to appeal to the Court of Appeals was unanimously denied by that court on May 31, 1947 (297 N. Y. 1042).
The present application for a new trial is dated July 1, 1949. It is based upon six purported selling memoranda sheets which plaintiff alleges he received from defendants at the time of the original transactions and which he found on or about December 3, 1948 during a visit to a safe-deposit vault which he maintained at Antwerp, Belgium. The ‘ ‘ memoranda sheets ’ ’ are plain sheets of paper containing lists of typed numerals. A comparison of these sheets with the original invoices and consular invoices used at the trial shows that the selling memoranda sheets contain a list of merchandise which is identical with the merchandise listed on defendants’ original invoices to plaintiff insofar as it refers to the number of parcels, the number of stones in each parcel and the karat weight of each parcel. The prices set forth for the listed items are, however, higher on the memoranda sheets than the prices for the corresponding items as set forth on the original invoices. How *664 ever, the total amount shown on the selling memoranda is identical with entries contained in the defendants’ black book. Hence, plaintiff urges, this “new evidence ” clearly shows that defendants did not testify truthfully when they explained the difference between the amount of purchases shown in the black book and the amount of the purchases as reflected by the consular invoices as being made up of purchases delivered personally to plaintiff in Europe.
Assuming the authenticity of the memoranda sheets, should the judgment entered in the action be set aside and a new trial ordered? On the record presented I do not think so.
The '‘ newly discovered ’ ’ evidence refers to only six of some 50 items set forth in the black book kept by the defendants. The trial record is replete with evidence, including letters in plaintiff’s own handwriting, establishing that he was deeply in debt to the defendants rather than that he had paid for more merchandise than he had received. No mention was made by plaintiff at any time, from 1942, when plaintiff asserted his first claim, until the present application of the existence of these memoranda sheets. While they may not have been in plaintiff’s possession at the time of trial, it is inconceivable that their existence was not within his knowledge. No explanation is given by plaintiff even now of how, for what purpose or the circumstances under which the memoranda sheets were delivered to him. The bald assertion that plaintiff did not discover their existence until December 3, 1948, is inadequate. I do not deem the memoranda sheets as within the classification of newly discovered evidence.
Moreover, although plaintiff now claims to have discovered the new evidence on December 3, 1948, in a bank vault which he maintained in Antwerp, Belgium, he testified in an examination in supplementary proceedings at Special Term, Part II of this court on March 31, 1949:
“ Q. When did you take your last trip to Europe? A. Two months ago. * * *
“ Q. Do you have a vault? A. No.
“ Q. Do you have a power of attorney for any vault? A. No.
“ Q. Do you have access to any vault? A. What is the meaning— oh no. * * *
“ Q. You cannot sign for any vault? A. No.”
The motion for a new trial was first belatedly brought on three months thereafter. The lack of candor, good faith and due diligence of the movant is obvious.
Motion denied.